<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LUIS DASTAS,                    :
                                :    Civil Action No. 11-1473 (FLW)
              Plaintiff,        :
                                :
              v.                :    **OPINION**
                                :
EDMOND C. CICCHI, et al.,        :
                                :
              Defendants.       :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Luis Dastas
MCACC
P.O. Box 266
New Brunwsick, NJ  08903

**WOLFSON**, District Judge

        Plaintiff Luis Dastas, a prisoner confined at Middlesex
County Adult Correctional Center in New Brunswick, New Jersey,
seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42
U.S.C. § 1983, alleging violations of his constitutional rights.
Based on his affidavit of indigence and the absence of three
qualifying dismissals within 28 U.S.C. §1915(g), the Court will
grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>
pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court
to file the Complaint.

        At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on eight separate occasions between November 15, 2010, and March 6, 2011, he asked to see medical personnel for itching.  He was seen on several, but not all, of these occasions, when he was told that he did not have scabies, and he was given several one-time doses of medication.  The medication did not relieve his itching for the long term and, on the last time he was itching, an officer refused to forward his request to see medical personnel, and he scratched until he bled.

Plaintiff names as defendants Warden Edmond C. Cicchi and C.F.G. Health Systems, L.L.C.  He seeks monetary damages for pain and suffering, including emotional and mental stress.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a

governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a

3

legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the <u>Twombly</u> pleading standard applies outside the § 1 antitrust context in which it was decided.   See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read <u>Twombly</u> so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must

4

distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

6

IV.   <u>ANALYSIS</u>

A.   <u>The Due Process Claim</u>

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or State law. <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.[1] <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150 (3d Cir. 2005); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). <u>Hubbard</u>, 399 F.3d at 157-60, 164-67; <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

---

[1] Although Plaintiff does not state that he is a pre-trial detainee, the Court notes that the New Jersey Department of Corrections Inmate Locator reflects that Plaintiff was sentenced on August 1, 2011, after the dates of the events described in the Complaint.

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  441 U.S.

8

at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

Here, Plaintiff alleges that he requested medical attention for itching on eight occasions over almost four months, that he was seen on several occasions, that he was diagnosed as not suffering from scabies, that he received medication on several occasions.  These facts do not state a claim for unconstitutional punishment with respect to a medical issue.

To the extent Petitioner was a sentenced prisoner at the time of the events complained of, the result would be the same under an Eighth Amendment analysis.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

9

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment

10

do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." <u>Monmouth County Corr.</u>

11

Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).
"Short of absolute denial, 'if necessary medical treatment [i]s
... delayed for non-medical reasons, a case of deliberate
indifference has been made out." Id. (citations omitted).
"Deliberate indifference is also evident where prison officials
erect arbitrary and burdensome procedures that 'result[] in
interminable delays and outright denials of medical care to
suffering inmates.'" Id. at 347 (citation omitted). Compare
Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary
judgment properly granted to prison warden and state commissioner
of corrections, the only allegation against whom was that they
failed to respond to letters from prisoner complaining of prison
doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d
218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable
under § 1983 if he knew or had reason to know of inadequate
medical care).

The facts alleged by Plaintiff establish neither a serious
medical need nor deliberate indifference on the part of personnel
at the Middlesex County Adult Correctional Center.  Plaintiff has
alleged that he has itching on only an intermittent, not
constant, basis.  He has alleged no facts suggesting that the
itching arises from a serious medical condition or from any
conditions at the jail; to the contrary, he alleges that medical
personnel have evaluated the itching and determined that he does

not suffer from scabies.  Moreover, he alleges that medical personnel have provided him with medications for his itching.  In short, he alleges only a difference of opinion about what treatment he should be receiving, plainly an insufficient basis for a claim that his Eighth Amendment right to medical care has been violated.

For all the foregoing reasons, the Complaint must be dismissed.

B.    No Vicarious Liability

In addition, the claims against the named defendants appear to be based solely upon an untenable theory of vicarious liability, seeking to hold the named defendants liable for the actions of individual nurses and/or correctional officers.

Municipal corporations and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be

13

predicated solely on the operation of <u>respondeat</u> <u>superior</u>.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence." <u>Rode v.</u>
<u>Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286,
1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is
responsible for either the affirmative proclamation of a policy
or acquiescence in a well-settled custom." <u>Bielevicz v. Dubinon</u>,
915 F.2d 845, 850 (3d Cir. 1990), <u>quoted in</u> <u>Blanche Rd. Corp. v.</u>
<u>Bensalem Twp.</u>, 57 F.3d 253, 269 n.16 (3d Cir.), <u>cert. denied</u>, 516
U.S. 915 (1995), and <u>quoted in</u> <u>Woodwind Estates, Ltd. v.</u>
<u>Gretkowski</u>, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must
demonstrate that, through its deliberate conduct, the
municipality was the moving force behind the plaintiff's injury.
<u>Monell</u>, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict." <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting <u>Pembaur v. City of Cincinnati</u>,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion).  A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law." [<u>Bd. of County Comm'rs of Bryan</u>
> <u>County, Oklahoma v. Brown</u>, 520 U.S. 397, 404 (1997).]

There are three situations where acts of a
government employee may be deemed to be the result of a
policy or custom of the governmental entity for whom
the employee works, thereby rendering the entity liable
under § 1983.  The first is where "the appropriate
officer or entity promulgates a generally applicable
statement of policy and the subsequent act complained
of is simply an implementation of that policy."  The
second occurs where "no rule has been announced as
policy but federal law has been violated by an act of
the policymaker itself."  Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

The same standard applies to claims against a private

corporation that is functioning as a "state actor."[2]  See Weigher

---

[2] Private parties may be liable under § 1983 only when they
have acted under color of state law.  Mark v. Borough of Hatboro,
51 F.3d 1137, 1141 (3d Cir.), cert. denied, 516 U.S. 858 (1995)
(quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)).
The "under color of state law" requirement of 42 U.S.C. § 1983
has been treated identically to the "state action" requirement of
the Fourteenth Amendment.  See Mark, 51 F.3d at 1141 (citing
United States v. Price, 383 U.S. 787, 794 n.7 (1966)); Lugar v.
Edmondson Oil Co., 457 U.S. 922, 928 (1982); Rendell-Baker v.
Kohn, 457 U.S. 830, 838 (1982)).  State action exists under
§ 1983 only when it can be said that the government is
responsible for the specific conduct of which a plaintiff
complains.  Mark, 51 F.3d at 1141-42.  "Put differently, deciding
whether there has been state action requires an inquiry into
whether 'there is a sufficiently close nexus between the State
and the challenged action of [the defendants] so that the action
of the latter may fairly be treated as that of the State
itself.'"  Id. at 1142 (quoting Blum v. Yaretsky, 457 U.S. 991,
1004 (1982)).

A private entity can be sued under § 1983 only where (1) it
"has exercised powers that are traditionally the exclusive

v. Prison Health Services, 402 Fed.Appx. 668, 669-70, 2010 WL 4739701 (3d Cir. Nov. 23, 2010).  For purposes of this Opinion and the accompanying Order, this Court will assume that C.F.G. Health Systems, L.L.C., could be considered a "state actor" for purposes of § 1983.

Nevertheless, here, where Plaintiff has alleged no facts suggesting that the challenged events were the result of a policy, practice, or custom, there is no basis to find the named defendants liable.

V.  CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(e), for failure to state a claim.[3]  However, because it is conceivable that Plaintiff may be

prerogative of the State," Mark, 51 F.3d at 1142; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights, Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991); Mark, 51 F.3d at 1143.

[3] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if

able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open and to file an amended complaint.[4]   To overcome the deficiencies noted herein, Plaintiff must be able to assert facts establishing (1) a serious medical condition, and (2) deliberate indifference, (3) by the named defendants.

An appropriate order follows.


s/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: October 24, 2011

Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.

[4] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.